IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TRACYE CURRIE, Individually | ) | |
| And as Surviving Mother and Personal | ) | |
| Representative of the Estate of | ) | |
| NODIANA ANTOINE, deceased, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No.** |
| | ) | **1:05-CV-1610-BBM** |
| CHEVRON U.S.A. INC. and | ) | |
| CHEVRON STATIONS INC., | ) | |
| | ) | |
|     Defendants. | ) | |

## CONSOLIDATED PRETRIAL ORDER

The parties, Tracye Currie ("Plaintiff"), Chevron U.S.A. Inc., and Chevron

Stations Inc. (collectively "Chevron"), hereby submit their proposed Consolidated

Pretrial Order.

1.

There are no motions or other matters pending for consideration by the court

except as noted:

**The deadline for filing <u>Daubert</u> motions has been extended until June 1,**

**2006.**

1

**The parties reserve the right to file any motions in limine not less than 15 days before the date on which the case is calendared for trial.**

2.

All discovery has been completed, unless otherwise noted and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

**The parties do not anticipate any additional discovery.**

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**Agreed.**

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**Jurisdiction is based on the diversity of citizenship pursuant to 28 U.S.C. § 1332.**

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

> **Plaintiff:**
> John M. Hudgins, IV
> Patrick B. Moore
> Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC
> 950 East Paces Ferry Road
> Suite 3000
> Atlanta, Georgia  30326
> Tel: 404/876-2700
> Fax: 404/875-9433
>
> **Defendants:**
> W. Ray Persons
> Halli D. Cohn
> King & Spalding LLP
> 1180 Peachtree Street, N.E.
> Atlanta, Georgia  30309
> Tel: 404/572-2494 (Persons)
> Tel: 404/572-3554 (Cohn)
> Fax: 404/572-5100

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR 29.3(B)(2)(b)). State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

**There is no reason why Plaintiff should not be entitled to open arguments to the jury.**

7.

The captioned case shall be tried ( **X** ) to a jury or (   ) to the court without a jury, or (   ) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**The parties agree that the trial should be bifurcated.  During the first phase of the trial, the jury will determine liability for compensatory and punitive damages, as well as the amount of compensatory damages.  Should the jury find defendants liable for punitive damages, the amount of punitive damages will be determined during the second phase of the trial.**

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

**See Attachment "A".**

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

**To more efficiently administer the questions posed by the parties' proposed voir dire, the parties intend to request permission to submit a juror questionnaire and present a joint questionnaire for the Court's consideration within 30 days of the filing of this Pretrial Order.**

Attached hereto as Attachment "B-3," "B-4," etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.

**Not Applicable.**

5

The court shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to plaintiff's voir dire questions.

State any objections to defendant's voir dire questions.

State any objections to the voir dire questions of the other parties, if any.

**The parties will file objections to voir dire questions no less than 15 days before the date on which the case is calendared for trial.**

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. §1870. See Fed.R.Civ.P.

47(b).

**Plaintiff requests a six (6) person jury with two (2) alternates.**

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

**None.**

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence.  All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

**See Attachment "C."**

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amounts claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

**See Attachment "D."**

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with

each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

**See Attachment "E."**

17.

The legal issues to be tried are as follows:

1.  Whether Chevron was negligent in the operation of the service station;

2.  Whether the harm suffered by Nodiana Antoine was foreseeable to Chevron;

3.  Whether Nodiana Antoine had knowledge equal or superior to that of Chevron regarding the risk of harm and could have avoided the danger with ordinary care;

4.  Whether Chevron's negligence was a proximate cause of the harm suffered by Nodiana Antoine;

5.  Whether Chevron violated Georgia regulations regarding the operation of service stations;

6.  Whether any violation by Chevron of Georgia regulations was the proximate cause of the harm suffered by Nodiana Antoine;

7.  Whether Nodiana Antoine was contributorily negligent;

8.  Whether Plaintiff is entitled to compensatory damages and, if so, the amount;

9.  Whether Chevron is liable for punitive damage and, if so, the amount.

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3," etc. for all other parties is a list of all the witnesses and their addresses for each party.  The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial.  Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonably specific summary of the expected testimony of each expert witness.

**The parties attach hereto their respective witness lists but reserve the right, with the Court's permission, to supplement their lists, upon a showing of good cause, up to 30 days before the date on which the case is calendared for trial.**

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been

reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G-3," etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

**The parties attach hereto their respective exhibit lists but reserve the right, with the Court's permission, to supplement their lists, upon a showing of good cause, up to 30 days before the date on which the case is calendared for trial.**

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are

multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

**With the Court's permission, the parties will submit any objections to exhibits at least 20 days before the date on which the case is calendared for trial.**

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the Court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

**The parties will introduce by deposition the testimony of any witness who is unavailable for trial for a legally sufficient reason or the testimony of any other witness which is permitted to be introduced via deposition and, with the Court's permission, will submit page and line designations of such testimony 30 days before the date on which the case is calendared for trial. Cross-designations to deposition designations shall be submitted 15 days before the date on which case is calendared for trial.**

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3," etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

**The parties reserve the right, with the Court's permission, to file trial briefs 30 days before the date on which the case is calendared for trial.**

22.

In the event this is a case designated for trial to the Court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, ND Ga. will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's *Pattern Jury Instructions* and Devitt and Blackmar's *Federal Jury*

14

*Practice and Instructions* in preparing the requests to charge. For those issues not covered by the *Pattern Instructions* or *Devitt and Blackmar,* counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order.  If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

**The parties do not agree on the format of a verdict form.  The parties will submit their proposed forms for the Court's consideration 30 days before the date on which the case is calendared for trial.**

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

**The parties do not anticipate the need for additional time for argument. However, the parties respectfully reserve the right to revisit this issue with the**

**Court at the close of evidence should they desire additional time for argument.**

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed findings of fact and conclusions of law not later than the opening of trial.

26.

Pursuant to LR 16.3, N.D. Ga., lead counsel and persons possessing settlement authority to bind the parties met in person on **April 28, 2006**, to discuss in good faith the possibility of settlement of this case.  The court (   ) has or ( **X** ) has not discussed settlement of this case with counsel. It appears at this time that there is:

(   ) A good possibility of settlement.

(   ) Some possibility of settlement.

( X) Little possibility of settlement.

(    ) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

**Agreed.**

28.

The plaintiff estimates that it will require **2.5** days to present its evidence. The defendants estimate that they will require **2.5** days to present their evidence. The other parties estimate that it will require **N/A** days to present their evidence. It is estimated that the total trial time with motions, openings, objections, evidence, and closings will be **6** days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case ( **X** ) submitted by stipulation of the parties or ( ) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this 4th day of May, 2006.


s/Beverly B. Martin
BEVERLY B. MARTIN
United States District Judge

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this Court.

> KING & SPALDING, LLP
> /s/ Robert B. Friedman
> W. Ray Persons
> Georgia Bar No. 573525
> Halli D. Cohn
> Georgia Bar No. 175505
> Robert B. Friedman
> Georgia Bar No. 277711
> 1180 Peachtree Street, N.E.
> Atlanta, Georgia 30309
> (404) 572-4600 (voice)
> (404) 572-5100 (facsimile)
> Counsel for Defendants
> CHEVRON U.S.A. INC. and
> CHEVRON STATIONS INC.
>
>
> WEINBERG, WHEELER, HUDGINS,
> GUNN & DIAL, LLC
> /s/ Shubhra R. Mashelkar
> John M. Hudgins, IV
> Georgia Bar No: 374125
> Patrick B. Moore
> Georgia Bar No. 520390
> Shubhra R. Mashelkar
> Georgia Bar No. 475388
> 950 East Paces Ferry Road, Suite 3000
> Atlanta, GA 30326
> (404)876-2700
> (404)875-9433 – Fax

Counsel for Plaintiff TRACYE CURRIE

ATTACHMENT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **TRACYE CURRIE, Individually and** | ) | |
| **as Surviving Mother and Personal** | ) | |
| **Representative of the Estate of** | ) | |
| **NODIANA ANTOINE, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **1:05-CV-1610-BBM** |
| **CHEVRON U.S.A. INC.,** | ) | |
| **CHEVRON STATIONS INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## QUESTIONS WHICH THE PARTIES REQUEST THAT THE COURT PROPOUND TO THE JURORS CONCERNING THEIR LEGAL QUALIFICATIONS TO SERVE

1.    Is any Juror a shareholder, officer, director, or employee of Chevron-Texaco, or any company affiliated with Chevron-Texaco?

2.    Is any Juror related by blood or marriage to Tracye Currie?

3.    Is any Juror related by blood or marriage to John M. Hudgins, Patrick B. Moore, Shubhra R. Mashelkar or anyone else who currently works or formerly worked for the law firm of Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC?

21

4.   Is any Juror related by blood or marriage to Bruce M. Trybus or Kieran O'Connor or anyone else who currently works or formerly worked for the law firm of Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A.?

5.   Is any Juror related by blood or marriage to W. Ray Person, Halli D. Cohn, or Robert Friedman or anyone else who currently works or formerly worked for the law firm of King & Spalding, LLP?

6.   Is any Juror a shareholder, officer, director or employee of Chevron?

7.   Does any Juror have any financial interest in Chevron?

ATTACHMENT "B-1"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **TRACYE CURRIE, Individually and** | ) | |
| **as Surviving Mother and Personal** | ) | |
| **Representative of the Estate of** | ) | |
| **NODIANA ANTOINE, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **1:05-CV-1610-BBM** |
| **CHEVRON U.S.A. INC.,** | ) | |
| **CHEVRON STATIONS INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## QUESTIONS PLAINTIFF WISHES TO BE PROPOUNDED
## TO THE JURORS

Plaintiff wishes that the following questions be propounded to the jurors on voir dire examination:

1.     Is there any reason – family, personal or otherwise – that you would not or might not be able to sit as a juror for this entire trial which is expected to take six (6) days?

2.     Do you know any of the following parties involved in this matter?

      a)     Tracye Currie;

   b)  Nodiana Antoine

3.  Do you know any of the attorneys involved in this matter?

   a)  John M. Hudgins, IV;

   b)  Patrick B. Moore;

   c)  Shubhra R. Mashelkar;

   d)  Bruce M. Trybus;

   e)  Kieran O'Connor;

   f)  W. Ray Person;

   g)  Halli D. Cohn;

   h)  Robert Friedman

4.  Do you know any members of the attorneys' firms?

   a)  Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC;

   b)  Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A.;

   c)  King & Spalding, LLP

5.  Do you know the judge in this matter?

   a)  Judge Beverly Martin?

6.  Do you now work, or have you ever worked, for Chevron?

7.   Do you or any of your immediate family members have any financial interest in Chevron?

8.   Do you have any prior criminal convictions?  If yes, what?

9.   Do you have any physical or mental defect which may render you incapable of satisfactory jury service?

10.  Do you know any of the witnesses that may be called?

    1)   Alex Thompson;

    2)   Pamela F. Robinson;

    3)   Jyotika Shukla;

    4)   Lydiah Mwangi;

    5)   Charles Williams;

    6)   Ahmed Islam;

    7)   James R. Watson;

    8)   Cynthia M. Watson;

    9)   Jason Barrett;

    10)   Donna Ellis;

    11)   Charles Ellis;

    12)   Dick Butterworth;

13)     Carol Faust;

14)     Courtney Yelder;

15)     Manuel Archuletta;

16)     Zakiyah Muhammad;

17)     Sara Celeste Miller;

18)     Dionne Roberts;

19)     Det. Christopher R. Twiggs;

20)     John A. Love;

21)     Sgt. Craig Dong;

22)     Rachel Bohling;

23)     Det. Cynthia G. Ash;

24)     Det. John W. Thompson;

25)     Lois E. King;

26)     Jamie W. Morris;

27)     Sgt. Roy T. Kindel;

28)     Junius D. Deboue;

29)     Drew Bell;

30)     Mike Beard;

31)    Sgt. Jeffrey Burris;

32)    Inv. Kenneth W. LeCroy;

33)    Brian S. Frist, M.D.;

34)    Dr. Mohan;

35)    Joseph L. Burton, M.D.;

36)    Hal Bennett;

37)    Dr. Kevin Richards;

38)    Steve Wilson;

39)    Jay Singleton;

40)    Dr. Walter Ingram;

41)    Kim Dagle, RN;

42)    Dennis West, RN;

43)    Robert N. Renkes;

44)    Glen Marshall, P.O.;

45)    B. Perry Woodside, Ph. D.;

46)    Rosemary Erickson;

47)    Robert Eagan;

48)    Bill Tracy;

49)    Jeffrey Shapiro.

11.    Is there anything about the case which may prevent you from being fair and impartial?

12.    Does any member of the jury panel know personally any lawyers of the law firms whose names I have just read?

13.    Has any member of the jury panel or any member of your immediate family ever had any legal training of any kind, or worked in any capacity for a law firm?

14.    Has any member of the jury panel met anyone who was employed by or has any member of the jury transacted business with Chevron or the law firms representing Chevron today at trial?

15.    Has any member of the jury panel or any member of your immediate family ever been self-employed or owned a business?

16.    Have you ever worked for a petroleum company, including gas stations or worked in any capacity in such an industry?

17.    The following information is requested from each potential juror:  age, address, years of residence in the Atlanta area, occupation and employer, number of years in occupation, marital status, children including names, ages,

and occupation, social, professional, or fraternal organizations in which you or your spouse is a member.

18. Have you ever had to hire a lawyer to help you get a dispute resolved? Who was the attorney?

19. Have you or any member of your immediate family ever been involved in a lawsuit other than a domestic matter?

20. Have you been a witness in a law suit other than a domestic matter? If so, please describe on whose behalf you were a witness, for Plaintiff or Defendant, and the nature of your involvement.

21. Have you ever served on a criminal or civil jury? What was the nature of the case? Did you reach a verdict?

22. Does anyone here have a family member, close friend or themselves who had some sort of negligence claim made against them or their business?

23. Is anyone here opposed to suits based on negligence in general, or think there are too many suits in general?

24. The Plaintiff reserves the right to ask further questions on voir dire which are reasonably suggested by the jury's responses to the questions listed herein.

ATTACHMENT "B-2"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **TRACYE CURRIE, Individually and** | ) | |
| **as Surviving Mother and Personal** | ) | |
| **Representative of the Estate of** | ) | |
| **NODIANA ANTOINE, deceased,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **1:05-CV-1610-BBM** |
| **CHEVRON U.S.A. INC.,** | ) | |
| **CHEVRON STATIONS INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## QUESTIONS DEFENDANTS WISH TO BE PROPOUNDED
## TO THE JURORS

Defendants wish that the following questions be propounded to the jurors on voir dire examination:

BACKGROUND INFORMATION

1.    What is your age?

EMPLOYMENT INFORMATION

2.    If you are employed:

    (a)    What is your job title?

(b)    How long have you had this job?
(c)    Briefly describe your responsibilities at work.

3.    Have you ever owned your own business? If yes, how many employees did you have?

4.    Has your work ever included any of the following responsibilities:

(a) handling hazardous materials
(b) selling hazardous materials
(c) customer safety
(d) employee safety
(e) compliance with safety codes/regulations

5.    Have you ever received any training in any of the following areas:

(a) handling hazardous materials
(b) selling hazardous materials
(c) customer safety
(d) employee safety
(e) compliance with safety codes/regulations
(f) law
(g) medicine

6.    Please list any other jobs you have held during the past ten years that you can recall.

7.    Have any of your jobs involved the following:

(a)    transporting gasoline or other flammable liquids?
(b)    handling gasoline or other flammable liquids?
(c)    selling gasoline or other flammable liquids?
(d)    working in a service station?

8.    Have you or has anyone close to you ever worked for:

     (a)     A lawyer or law firm?
     (b)     An accountant?
     (c)     The court system?
     (d)     a gas station?
     (e)     a gas marketer?
     (f)     an gas wholesaler?
     (g)     an oil company?
     (h)     a fire department?

## EDUCATION

9.     If you attended college, vocational, or technical school, what was your goal?

     (a) Major subject(s)?
     (b) Name and location of school(s)?

10.     Please list and briefly describe any classes, correspondence courses, seminars or workshops you have taken since you left school.

11.     Have you ever had any training or advanced education in any aspect of chemistry? thermodynamics?

12.     Have you ever had any training or advanced education in any aspect of retail marketing?

13.     Have you ever had any training or advanced education in any aspect of fire safety?

## MILITARY BACKGROUND

14.     (a)     Have you ever served in any branch of the U.S. military?
           (b)     If yes, please list your occupational specialty, the branch of service and your highest rank.

## ASSOCIATIONS/ORGANIZATIONS

15.    Are you a member of any trade or professional association, union, civic club, religious or other organization?

      (a)    If yes, please list all of the organizations to which you belong.

      (b)    Please list any office you currently hold or have held in the past in these or other organizations.

## INFORMATION REGARDING FAMILY

16.    Do you have children?

17.    If you have adult children, please list their names, ages, and occupations, if any.

18.    Have any of you had to deal with the death of a child?

19.    If there are other adults living in your home other than your spouse, partner, or children, please list their occupations and employers.

20.    Do you have any religious or other beliefs that would make it difficult for you to sit in judgment of another person? If yes, please explain.

21.    Please list your hobbies.

22.    Do you read business news or business periodicals three or more times a week?

## YOUR SPOUSE OR PARTNER'S BACKGROUND

23.    Briefly describe your spouse or partner's responsibilities at work.

24.    How long has he or she had this job?

25.    Please list any other jobs he or she has held during the past ten years.

26.    Has your spouse's or partner's job ever involved one of the following:

      (a)    transporting gasoline or other flammable liquids?

(b)     handling gasoline or other flammable liquids?
(c)     selling gasoline or other flammable liquids?
(d)     working in a service station?

27.     Has your spouse or partner owned his or her own business? If yes, how many employees did the business have?

28.     Has your spouse or partner ever been an officer or director of a corporation?

29.     If your spouse or partner attended college, vocational, or technical school, what was:

(a) His or her major subject?
(b) The name and location of the school?

30.     Has your spouse or partner ever served in any branch of the U.S. military? If yes, please list the branch of service and his or her highest rank.

31.     Is your spouse or partner a member of any trade or professional association, union, civic club, religious or other organization? If yes, please list all of the organizations to which he or she belongs.

## CLOSE FRIEND OR RELATIVE'S BACKGROUND

32.     Do you have a close friend or relative who has experience with any of the following:

(a)     transporting gasoline or other flammable liquids?
(b)     handling gasoline or other flammable liquids?
(c)     selling gasoline or other flammable liquids?
(d)     working in a service station?

33.     Do you have a close friend or relative who owned his or her own business? If yes, how many employees did the business have?

34

FAMILIARITY WITH JUDICIAL SYSTEM

34.    Have you ever served as a juror before?

    (a)    If yes, please list the court(s), the type of case(s), and the approximate date(s).
    (b)    Were you ever the foreperson?
    (c)    Has any of the juries on which you have served been unable to reach a verdict?
    (d)    Did you enjoy your previous experience(s) as a juror?

35.    Have you ever been to court before, other than for jury service? If yes, please describe the circumstances.

36.    Have you ever testified in a trial or court proceeding?

37.    Have you ever had your deposition taken?

38.    Have you or any member of your household or family, or any close friends ever sued or been sued? If yes, how was the case resolved?

39.    Have you ever thought you might have a reason to file a lawsuit but decided not to? If yes, please describe the circumstances.

MISCELLANEOUS

40.    Which of the following is your main source of news: television, radio, newspaper(s), magazine(s)?

41.    Have you ever been represented by Plaintiff's counsel, Mr. Hudgins or Mr. Moore?

42.    Have you ever been represented by an attorney in plaintiff's counsel's law firm, Weinberg, Wheeler, Hudgins, Gunn, & Dial?

43.    How do you feel about the size of money awards given in trials today: Too large;

Fine; Too small?

44.    Have you ever been the victim of a violent crime?

45.    Have you ever been the victim of arson?
46.    Have you ever seen firsthand someone who had received burn injuries?

ABOUT THIS CASE

47.    This lawsuit involves a woman who was set on fire by a friend while on the premises of a gas station.  Have any of you ever been injured by someone else while on someone else's private property?

48     Have you ever had a bad experience at a gas station?

     (a)    Ever seen a fire start at a gas station?
     (b)    Ever been the victim of a crime at a gas station?
     (c)    Ever seen a crime take place at a gas station?
     (d)    Ever had gasoline accidentally spill at a gas station?
     (e)    Ever had problems with someone who worked in a gas station?

49.    Have you ever had a problem with someone who worked in a business and did not speak English very well?

     (a)    Do you think that people who work in retail establishments, such as gas stations and supermarkets should be able to speak fluent English?

50.    Would you be unable find in favor of Chevron, if the evidence justified it, because of the high price of gasoline?

51.    Do you think that the oil companies are charging higher gas prices than they need to and are taking advantage of the consumers?

52.    Do you own stock in any large, public oil companies?  Exxon? BP-Amoco? Shell? Chevron-Texaco?

53.     Given the nature of this case, is there anything in your background and experience that would make it difficult for you to be fair and impartial?

54.     Are there any matters that you would like to bring to the attention of the judge and lawyers that you do not want to discuss in the presence of other potential jurors?

ATTACHMENT "C-1"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **TRACYE CURRIE, Individually and** | ) | |
| **as Surviving Mother and Personal** | ) | |
| **Representative of the Estate of** | ) | |
| **NODIANA ANTOINE, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **1:05-CV-1610-BBM** |
| **CHEVRON U.S.A. INC.,** | ) | |
| **CHEVRON STATIONS INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S OUTLINE OF THE CASE

The following is a succinct summary of Plaintiff's case:

(A)  This case arises out of the personal injuries sustained by decedent, Nodiana
Antoine, due to the negligence of Chevron U.S.A. Inc. and Chevron Stations
Inc., individually and/or through its agents.  On May 25, 2003, Nodiana Antoine
and Anjail Muhammad became involved in a disagreement in the immediate
vicinity of a Chevron gas station.  Subsequently, Muhammad forcibly walked
Nodiana onto the Chevron gas station premises.  Muhammad signaled the clerk

to activate the gas pump.  The clerk at the gas station activated the gas pump in question.  Muhammad doused Nodiana with gasoline.  A short distance away from the gas station, Muhammad set Nodiana on fire causing her to suffer burns and death as a result of those injuries on July 9, 2003.

(B)    Plaintiff contends that the general principles of Georgia law apply to this case, including but not limited to O.C.G.A. § 51-3-1, et seq.; O.C.G.A. § 51-4-1, et seq.; O.C.G.A. § 51-12-1, et seq.; Fire Protection and Safety Act, O.C.G.A. §§ 25-2-4, 25-2-38; Rules of Safety Fire Commissioner: Ga. Comp. R. and Regs. r. 120-3-11-.01, et seq.; and the additional rules set for in the Automotive and Marine Service Station Code, incorporated by reference in these Safety Fire Commissioner regulations.

(C)    Acts of negligence:

   1.    Chevron breached its duty of care by negligently operating the gas station at issue in that Chevron failed to properly monitor the gas station, failed to take appropriate safeguards to restrict access to its gasoline, and failed to exercise ordinary care in keeping the premises safe;

   2.    Chevron was also negligent and breached its duty by knowingly entrusting or giving a dangerous instrumentality, the gasoline, to Muhammad;

3.  Chevron breached its duty by not having appropriate policies and procedures in place, not hiring appropriate personnel, and not providing its clerks with adequate and appropriate training and supervision to ensure that the gasoline being sold at the gas station was safely and properly dispensed only into approved containers;

4.  Chevron breached its duty because its clerk failed to supervise, observe and control the dispensing of gasoline;

5.  Chevron also breached it duty of care by improperly designing, constructing, furnishing and/or maintaining the gas station in such a fashion that its clerk did not have a clear view of the gasoline dispensing area;

6.  Chevron is also liable under the theory of negligence per se by violating one or more of the Fire Protection and Safety Act, Rules of Safety Fire Commissioner and the additional rules set forth in the Automotive and Marine Service Station Code, incorporated by reference in these Safety Fire Commissioner regulations.

(D)    Damages:

    a.    For damages in an amount to be determined by the jury sufficient to compensate Tracye Currie for the full value of her daughter's life. O.C.G.A. § 51-4-1, et. seq.;

    b.    For damages in an amount to be determined by the jury sufficient to compensate Tracye Currie, as Personal Representative of the Estate of Nodiana Antoine, for pain and suffering of Nodiana Antoine.  O.C.G.A. § 51-4-5, et. seq.;

    c.    For damages in an amount to be determined by the jury sufficient to compensate Tracye Currie, as Personal Representative of the Estate of Nodiana Antoine, for medical, funeral, burial and other related expenses. O.C.G.A. § 51-4-5 et. seq.; and

    d.    For punitive damages in an amount to be determined by the jury to sufficiently punish and deter the Defendants Chevron U.S.A., Inc. and Chevron Stations Inc. from similar future conduct. O.C.G.A. § 51-12-5.1.

ATTACHMENT "D-1"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **TRACYE CURRIE, Individually and** | ) | |
| **as Surviving Mother and Personal** | ) | |
| **Representative of the Estate of** | ) | |
| **NODIANA ANTOINE, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **1:05-CV-1610-BBM** |
| **CHEVRON U.S.A. INC.,** | ) | |
| **CHEVRON STATIONS INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' STATEMENT OF THE CASE

The following is Defendants' statement of the case:

## I.    Factual Summary of General, Specific, and Affirmative Defenses

On the morning of May 25, 2003, Anjail Muhammad set her girlfriend, Nodiana Antoine, on fire in a parking lot across the street from the Chevron gas station on Roswell Road in Marietta, Georgia. Several weeks later, Antoine died from the injuries she received, and Muhammad was charged with first-degree murder. The State of Georgia is seeking the death penalty against Muhammad.

The design of the subject Chevron station is similar to many service stations in Georgia.  Likewise, Chevron operated the Chevron station in a manner consistent with the standard of care in the industry.  The employees working at the station on May 25, 2003 acted in a manner consistent with the standard of care in the industry.

Muhammad's crime was not foreseeable to Chevron.  Prior to May 25, 2003, there had been no violent crimes at this service station, which is in a low-crime suburban area of Cobb County, Georgia.  There had been no fires at this service station.  Moreover, there is no evidence of any prior incident at any Chevron station where a person intentionally doused another person with gasoline, let alone evidence that gasoline from a Chevron station was used as a murder weapon.  Muhammad and Antoine's behavior at the station did not make it foreseeable that Muhammad would set Antoine on fire.  The last person who interacted with Muhammad and Antoine before Antoine was set on fire, Pamela Robinson, did not suspect that a violent act was about to occur.  The last time the Chevron attendant saw Muhammad and Antoine, they were walking off the station property and gave no indication anything was wrong.

Antoine had knowledge equal to or superior to Chevron regarding the risk of Muhammad's criminal attack.  Muhammad and Antoine had been in a violent, tumultuous, intimate relationship.  Muhammad had repeatedly threatened to kill or harm

Antoine if she tried to end the relationship. Friends of Antoine had witnessed Muhammad's threats of physical harm to Antoine and had seen evidence of Muhammad's physical abuse of Antoine. When Muhammad lived up to her word on May 25, 2003, it was completely and uniquely foreseeable to Antoine, but not to Chevron. Chevron had no prior knowledge of the relationship between Muhammad and Antoine. Antoine's knowledge of the risk Muhammad posed to her was far superior to Chevron's before either woman ever set foot on Chevron property. Moreover, once Antoine had been doused with gasoline, she was the only person who had knowledge of the immediate risk that Muhammad posed.

Chevron did not violate any regulations applicable to the operation of service stations. Georgia law, as it is understood and applied by Chevron, by the enforcing authorities, and by the industry, requires that an attendant be on duty while the station is open, and that the attendant have a general view of the dispensing islands. The Chevron attendant on duty at the time of the incident was able to view all the dispensing islands. She was not performing any other task that distracted her from properly supervising the dispensing islands. That is, she was not stocking the cooler, cleaning the bathroom, etc. She was at the register, able to control the dispensers for customers. The subject Chevron station had never been cited by regulating authorities

for violation or non-compliance with any regulation or law. Although no longer owned or operated by Chevron, the station continues to be operated in the same manner as at the time of the incident.

Muhammad's criminal act of setting Antoine on fire was an additional proximate cause of Antoine's injuries. This act occurred across the street from the Chevron station, a significant length of time after the alleged dousing of Antoine with gasoline. It was Muhammad's act of setting Antoine on fire, not her alleged dousing of Antoine with gasoline, that caused Antoine's injuries. Between the time of the alleged dousing and the time Muhammad set Antoine on fire, there was opportunity for Antoine to escape, shout for help, or otherwise avoid being set on fire by Muhammad.

Antoine's failure to take reasonable care for her own safety was an additional proximate cause of her injuries. There will be no evidence that Antoine, after allegedly being doused with gasoline, asked for help, tried to run away, or took any other action to call attention to her situation. Even when Antoine, allegedly wet with gasoline, heard Muhammad request a cigarette lighter from a customer, Antoine gave no indication that she was at risk.

## II.     Relevant Rules, Regulations, Statutes, and Illustrative Case Law

### A.     Those creating a defense on the issue of negligence

1.   <u>Sturbridge Partners, Ltd. v. Walker</u>, 267 Ga. 785, 785-86, 482 S.E.2d 339, 340 (1997);

2.   <u>Days Inn of America, Inc. v. Matt</u>, 265 Ga. 235, 236, 454 S.E.2d 507, 508 (1995);

3.   <u>Lau's Corp. v. Haskins</u>, 261 Ga. 491, 492, 405 S.E.2d 474, 476 (1991);

4.   <u>Doe v. Prudential-Bache/A.G. Spanos Realty Partners</u>, 268 Ga. 604, 606, 492 S.E.2d 865, 867 (1997);

5.   <u>Baker v. Simon Prop. Group</u>, 273 Ga. App. 406, 614 S.E.2d 793 (2005);

6.   <u>Agnes Scott College, Inc. v. Clark</u>, 273 Ga. App. 619, 616 S.E.2d 468 (2005);

7.   <u>Whitmore v. First Fed. Savs. Bank</u>, 225 Ga. App. 768, 770, 484 S.E.2d 708, 710 (1997);

8.   <u>Garnett v. Mathison</u>, 179 Ga. App. 242, 243, 345 S.E.2d 919, 920 (1986);

9.   <u>Griffin v. AAA Auto Club South, Inc.</u>, 221 Ga. App. 1, 2, 470 S.E.2d 474, 476 (1996);

10.     Howell v. Three Rivers Security, Inc., 216 Ga. App. 890, 456
        S.E.2d 278 (1995);

11.     Cook v. Micro Craft, Inc., 262 Ga. App. 434, 438, 585 S.E.2d 628,
        631 (2003);

12.     Britt v. Kelly & Picerne, Inc., 258 Ga. App. 843, 845, 575 S.E.2d
        732, 734-35 (2002);

13.     Rice v. Six Flags Over Ga., LLC, 257 Ga. App. 864, 868, 572
        S.E.2d 322, 327 (2002);

14.     Quiktrip Corp. v. Fesenko, 228 Ga. App. 287, 289, 491 S.E.2d
        504, 506 (1997).

**B.     Those creating a defense on the issue of negligence per se**

1.      O.C.G.A. §25-2-16;

2.      Ga. Comp. R. and Regs. R. 120-3-11-.07;

3.      Generali--U.S. Branch v. Southeastern Security Co., 229 Ga. App.
        277, 280, 493 S.E.2d 731, 734-35 (1997);

4.      Potts v. Fidelity Fruit & Produce Co., 165 Ga. App. 546, 547, 301
        S.E.2d 903 (1983);

    5.    <u>West v. Mache of Cochran, Inc.</u>, 187 Ga. App. 365, 370 S.E.2d 169 (1988);

    6.    <u>Montgomery Ward v. Cooper</u>, 177 Ga. App. 540, 339 S.E.2d 755 (1986);

    7.    <u>Deese v. NationsBank of Georgia</u>, 222 Ga. App. 275, 474 S.E.2d 18 (1996);

    8.    <u>Wolcott v. Total Petroleum</u>, 964 P.2d 609 (Col. Ct. App. 1998);

    9.    <u>Stafford v. Borden</u>, 625 N.E.2d 12 (Ill. 1st D.C.A. 1993).

**C.    Those creating a defense on the issue of comparative fault**

    1.    O.C.G.A. § 51-11-7.

**D.    Those creating a defense on the issue of negligent hire/training**

    1.    O.C.G.A. § 34-7-20;

    2.    <u>Kaiser v. Tara Ford, Inc.</u>, 248 Ga. App. 481, 546 S.E.2d 861 (2001);

    3.    <u>Southern Bell Tel. & Telegraph Co. v. Sahara</u>, 167 Ga. App. 665, 307 S.E.2d 139 (1983).

**E.    Those creating a defense on the issue of punitive damages**

    1.    O.C.G.A. § 51-12-5.1;

2.    <u>Sturbridge Partners, Ltd. v. Walker</u>, 267 Ga. 785, 785-86, 482 S.E.2d 339, 340 (1997);

3.    <u>Anderson v. Radisson Hotel Corp.</u>, 834 F. Supp. 1364 (S.D. Ga. 1993);

4.    <u>Keith v. Beard</u>, 219 Ga. App. 633, 464 S.E.2d 633 (1995).

ATTACHMENT "E-1"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **TRACYE CURRIE, Individually and as Surviving Mother and Personal Representative of the Estate of NODIANA ANTOINE, deceased,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | **1:05-CV-1610-BBM** |
| **CHEVRON U.S.A. INC.,** ) | |
| **CHEVRON STATIONS INC.,** ) | |
| ) | |
| **Defendants.** ) | |

## FACTS STIPULATED BY THE PARTIES

The parties agree to stipulate to the following facts:

**The parties have not stipulated to any facts at this time.  The parties reserve**

49

the right, with the Court's permission, to supplement this section, upon a showing of good cause, up to 30 days before the date on which the case is calendared for trial.

ATTACHMENT "F-1"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **TRACYE CURRIE, Individually and** ) | |
| **as Surviving Mother and Personal** ) | |
| **Representative of the Estate of** ) | |
| **NODIANA ANTOINE, deceased,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | **1:05-CV-1610-BBM** |
| **CHEVRON U.S.A. INC.,** ) | |
| **CHEVRON STATIONS INC.,** ) | |
| ) | |
| **Defendants.** ) | |

## PLAINTIFF'S LIST OF WITNESSES

Plaintiff will call the following:

Tracye Currie, with the knowledge of the decedent, Nodiana Antoine, and related

damages in this suit.  Her address is 1008 N. Governor Street, Tampa, Florida

33602, (813)-224-0544.

Plaintiff may call the following:

1)    Alex S. Thompson, with the knowledge of the decedent, Nodiana Antoine,

and related damages in this suit.  His address is 1008 N. Governor Street,

51

Tampa, Florida 33602, (813)-224-0544;

2)    Pamela F. Robinson with knowledge of the incident in question. Her address

is 782 Barnes Mill Trace, NE, Marietta, Georgia 30062;

3)    Jyotika Shukla with knowledge of the incident in question;

4)    Lydiah Mwangi with knowledge of the incident in question. She resides in

Douglasville, Georgia;

5)    Ahmed Islam with knowledge of the incident in question. His address is 181

Rotherhithe Lane, Marietta, Georgia;

6)    Charles Williams with knowledge of the incident in question. His address is

4308 Sprucebough Drive, Marietta, Georgia;

7)    William Tracy with knowledge of the incident in question and Chevron gas

stations in general;

8)    James R. Watson with knowledge of the incident in question;

9)    Cynthia M. Watson with knowledge of the incident in question;

10)    Jason Barrett with knowledge of the incident in question;

11)    Donna Ellis with knowledge of the incident in question;

12)    Charles Ellis with knowledge of the incident in question;

13)    Dick Butterworth with knowledge of the incident in question;

14)     Carol Faust with knowledge of the incident in question;

15)     Courtney Yelder Manus with knowledge and information about Nodiana Antoine.  Her address is 2806 West Meighan Boulevard, Apartment A, Gadsden, Alabama 35904, (256) 543-0383;

16)     Manuel Archuletta with knowledge and information about Nodiana Antoine;

17)     Zakiyah Muhammad with knowledge and information about Nodiana Antoine;

18)     Sara Celeste Miller with knowledge and information about Nodiana Antoine;

19)     Dionne Roberts with knowledge and information about Nodiana Antoine;

20)     Det. Christopher R. Twiggs with the knowledge of investigation of the incident in question.  Det. Twiggs is with the Cobb County Police Department, 140 North Marietta Parkway, Marietta, Georgia 30060;

21)     John A. Love with the knowledge of investigation of the incident in question. Mr. Love is with the Cobb County Police Department, 140 North Marietta Parkway, Marietta, Georgia 30060;

22)     Sgt. Craig Dong with the knowledge of investigation of the incident in question. Sgt. Dong is with the Cobb County Police Department, 140 North Marietta Parkway, Marietta, Georgia 30060;

23) Rachel Bohling with the knowledge of the investigation of the incident in question. Ms. Bohling is with the Cobb County Police Department, 140 North Marietta Parkway, Marietta, Georgia 30060;

24) Det. Cynthia G. Ash, with the knowledge of investigation of the incident in question. Det. Ash is with the Cobb County Police Department, 140 North Marietta Parkway, Marietta, Georgia 30060;

25) Det. John W. Thompson with the knowledge of investigation of the incident in question. Det. Thompson is with the Cobb County Police Department, 140 North Marietta Parkway, Marietta, Georgia 30060;

26) Lois E. King with the knowledge of investigation of the incident in question. Ms. King is with the Cobb County Police Department, 140 North Marietta Parkway, Marietta, Georgia 30060;

27) Jamie W. Morris with the knowledge of investigation of the incident in question. Jamie Morris is with the Cobb County Police Department, 140 North Marietta Parkway, Marietta, Georgia 30060;

28) Sgt. Roy T. Kindel with the knowledge of investigation of the incident in question. Sgt. Kindel is with the Cobb County Police Department, 140 North Marietta Parkway, Marietta, Georgia 30060;

29)    Junius D. Deboue, with the knowledge of investigation of the incident in question.  Junius Deboue is with the Cobb County Sherriff's Office, P.O. Box 649, Marietta, Georgia 30061;

30)    Drew Bell with the knowledge of the incident in question.  Drew Bell is with the Cobb County Fire Department, Administrative Office, 1595 County Services Pkwy, Marietta, Georgia 30008;

31)    Mike Beard with the knowledge of the incident in question.  Mike Beard is with the Cobb County Fire Department, Administrative Office, 1595 County Services Pkwy, Marietta, Georgia 30008;

32)    Sgt. Jeffrey Burris with the knowledge of the incident in question.  Sgt. Burris is with the Cobb County Fire Department, Administrative Office, 1595 County Services Pkwy, Marietta, Georgia 30008;

33)    Inv. Kenneth W. LeCroy with the knowledge of the investigation of the incident in question.  Inv. LeCroy is with the Cobb County Fire Investigations, 140 N. Marietta Parkway, Marietta, Georgia 30060;

34)    Brian S. Frist, M.D., Chief Medical Examiner, Cobb County, with the knowledge of the death of Nodiana Antoine;

35)    Dr. Mohan with the knowledge of the death of Nodiana Antoine;

36)    Joseph L. Burton, M.D., Senior Consulting Forensic Pathologist, Cobb County, with the knowledge of the death of Nodiana Antoine;

37)    Hal Bennett, Forensic Investigator, Cobb County, with the knowledge of the death of Nodiana Antoine;

38)    Dr. Kevin Richards; Adult Forensic Services, Northwest Georgia Regional Hospital, with the knowledge of the death of Nodiana Antoine;

39)    Steve Wilson, Metro Atlanta Ambulance, with knowledge of the personal injuries to Nodiana Antoine;

40)    Jay Singleton, Metro Atlanta Ambulance, with knowledge of the personal injuries to Nodiana Antoine;

41)    Dr. Walter Ingram, Grady Hospital Burn Center, with knowledge of the personal injuries to Nodiana Antoine;

42)    Kim Dagle, RN, Grady Hospital Emergency Unit, with knowledge of the personal injuries to Nodiana Antoine;

43)    Dennis West, RN, Grady Hospital Burn Center, with knowledge of the personal injuries to Nodiana Antoine;

44)    Robert N. Renkes, 3602 East 70th Street, Tulsa, Oklahoma 74136. Mr. Renkes is expected to testify that the actions and precautions taken by

Chevron were improper, that Chevron did not follow standard industry practice, that Chevron did not follow Chevron recommended practices, that Chevron did not comply with state fire laws and national consensus fire codes, and that Chevron was negligent.

45)    Glen Marshall, P.O. Box 6744, Kingwood, Texas, 77325; 281-359-7586. Mr. Marshall will testify that Defendant and/or their employees clearly failed to satisfy the intent of either code or Chevron's own corporate policies by maintaining reasonable control of the fueling islands, thus breaching the minimum required standard of care for the industry

46)    B. Perry Woodside, III, Ph. D. P.O. Box 1204, Charleston, South Carolina 29402.  Dr. Woodside will testify as an expert regarding the analysis of economic loss due to the death of Nodiana Antoine.

Plaintiff reserves the right call any witnesses identified in Defendants' Witness List (Attachment "F-2") as may be attached to the Pre-Trial Order.  Plaintiff reserves the right to object to witnesses contained in Defendants' Witness List (Attachment "F-2").

ATTACHMENT "F-2"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **TRACYE CURRIE, Individually and**<br>**as Surviving Mother and Personal**<br>**Representative of the Estate of**<br>**NODIANA ANTOINE, deceased,** | )<br>)<br>)<br>)<br>) |
| **Plaintiff,** | )<br>) |
| **v.** | )  **Civil Action No.**<br>)  **1:05-CV-1610-BBM** |
| **CHEVRON U.S.A. INC.,**<br>**CHEVRON STATIONS INC.,** | )<br>)<br>) |
| **Defendants.** | ) |

## DEFENDANTS' LIST OF WITNESSES

Defendants may have present at trial:

1.  Lisa Ann Shelton Agulia
    325 Long Hollow Road
    Fort Payne, Alabama  35968

2.  Manuel Archuletta
    600 Valley Street
    Gadsden, Alabama  35902

3.      Det. Cynthia Gale Ash
        Cobb County Police Department
        Crimes Against Persons Dept.
        140 North Marietta Parkway
        Marietta, Georgia  30060-1454

4.      Jason L. Barrett
        775 Fern Street
        Marietta, Georgia  30067

5.      Mike Beard
        Cobb County Fire Department
        Administrative Offices
        1595 County Services Parkway
        Marietta, Georgia  30008

6.      Drew Bell
        Cobb County Fire Department
        Administrative Offices
        1595 County Services Parkway
        Marietta, Georgia  30008

7.      Hal Bennett
        Office of the Medical Examiner
        Cobb County
        150 North Marietta Parkway
        Marietta, Georgia  30060

8.      Rachel Bohling
        Cobb County Police Department
        140 North Marietta Parkway
        Marietta, Georgia  30060-1454

9.    Officer Brubaker
      Cobb County Police Department
      140 North Marietta Parkway
      Marietta, Georgia  30060-1454

10.   Sgt. Jeffrey Burris
      Cobb County Fire Department
      Administrative Offices
      1595 County Services Parkway
      Marietta, Georgia  30008

11.   Dr. Joseph L. Burton, M.D.
      Senior Consulting Forensic Pathologist
      Officer of the Medical Examiner, Cobb County
      150 North Marietta Parkway
      Marietta, Georgia  30060

12.   Dick Butterworth
      655 Willeo Road
      Roswell, Georgia  30075

13.   Doug Byron
      Forensic and Scientific Testing, Inc.
      3069 Amwiler Road
      Suite 9
      Atlanta, Georgia  30360

14.   Det. Clayton
      Cobb County Police Department
      140 North Marietta Parkway
      Marietta, Georgia  30060-1454

15.   Tracye Currie
      1008 Governor Street
      Tampa, Florida  33602

16.    Kim Dagle, R.N.
        Grady Memorial Hospital
        80 Jesse Hill Jr. Drive, SE
        Atlanta, Georgia  30303

17.    Junius D. Deboue
        Cobb County Sheriff's Office
        P.O. Box 649
        Marietta, Georgia  30061

18.    Sgt. Craig Dong
        Cobb County Police Department
        140 North Marietta Parkway
        Marietta, Georgia  30060-1454

19.    Robert S. Eagan (Expert)
        Fuel Systems Consulting
        490 Cypress Drive
        Rio Vista, California  94571

        Mr. Eagan will offer expert opinion testimony regarding the design and
        construction of the Chevron station.

20.    Charles Ellis
        1491 Colgate Court
        Marietta, Georgia  30068

21.    Donna Ellis
        1491 Colgate Court
        Marietta, Georgia  30068

22.    Rosemary J. Erickson, Ph.D. (Expert)
       Athena Research Corporation
       1500 South 5th Avenue
       Sioux Falls, South Dakota  57105

       Dr. Erickson, a forensic sociologist, will offer expert opinion testimony
       regarding the foreseeability of Muhammad's crime, including the factors
       which made Muhammad's crime more and less predictable to Chevron.

23.    Carol Faust
       655 Willeo Road
       Roswell, Georgia  30075

24.    Brian S. Frist, M.D., M.E.
       Office of the Medical Examiner
       Cobb County
       150 North Marietta Parkway
       Marietta, Georgia  30060

25.    Brian B. Gordon
       Cobb County Police Department
       140 North Marietta Parkway
       Marietta, Georgia  30060-1454

26.    Tana Hill
       Address Unknown

27.    Robert E. Hutchison
       Cobb County Police Department
       140 North Marietta Parkway
       Marietta, Georgia  30060-1454

28.  Ahmed Islam
     Chevron Food Store
     2243 Roswell Road
     Marietta, Georgia  30062-2974

29.  Dr. Walter Ingram
     Grady Hospital Burn Center
     80 Jesse Hill Drive
     Atlanta, Georgia  30303

30.  Marie E. Jackson
     Cobb County Police Department
     140 North Marietta Parkway
     Marietta, Georgia  30060-1454

31.  Julia Joyner
     2085 Roswell Rd.
     Marietta, GA  30062-7517
     (last known address)

32.  Nicole Keys
     Address Unknown

33.  Sgt. Roy T. Kindel
     Cobb County Police Department
     140 North Marietta Parkway
     Marietta, Georgia  30060-1454

34.  Officer Lois Elizabeth King
     Cobb County Police Department
     140 North Marietta Parkway
     Marietta, Georgia  30060-1454

35.   Inv. Kenneth W. LeCroy
      Cobb County Fire Investigations
      140 North Marietta Parkway
      Marietta, Georgia  30060

36.   Officer John Allen Love
      Cobb County Police Department
      140 North Marietta Parkway
      Marietta, Georgia  30060-1454

37.   Sara Celeste Miller
      600 Valley Street
      Gadsden, Alabama  35902

38.   Dr. Mohan
      Office of the Medical Examiner Cobb County
      150 North Marietta Parkway
      Marietta, Georgia  30060

39.   Officer Jamie W. Morris
      Cobb County Police Department
      140 North Marietta Parkway
      Marietta, Georgia  30060-1454

40.   Anjail Durriyyah Muhammad
      Cobb County Adult Detention Center
      1825 County Services Parkway
      Marietta, Georgia  30060

41.   Lydiah Mwangi
      1832 Hidden Glen Drive
      Marietta, Georgia  30067

42.   Christopher Nely
      Address Unknown

43.   Dr. Kevin Richards
      Adult Forensic Services
      Northwest Georgia Regional Hospital
      1305 Redmond Circle
      Rome, Georgia  30165-1307

44.   Dionne Roberts
      600 Valley Street
      Gadsden, Alabama  35902

45.   Pamela Robinson
      782 Barnes Mill Trace
      Marietta, Georgia  30062

46.   Frances Sandridge
      1138 7th Avenue
      Gadsden, Alabama  35901

47.   Jeffrey Shapiro, P.E. (Expert)
      International Code Consultants
      Austin, Texas  78750

      Mr. Shapiro will offer expert opinion testimony regarding the Chevron's
      station's compliance with industry standards, custom, and practice,
      applicable fire codes, and applicable regulations.

48.   Jyotika Shukla
      1812 Chase Wood Park
      Marietta, Georgia  30066

49.   Jay Singleton
      Metro Atlanta Ambulance
      595 Armstrong Street
      Marietta, Georgia  30060

50.    Det. John W. Thompson
       Cobb County Police Department
       140 North Marietta Parkway
       Marietta, Georgia  30060-1454

51.    Bill Tracy
       Chevron U.S.A. Inc.
       6001 Bollinger Canyon Road
       Building L3256
       San Ramon, California  94583

52.    Det. Christopher R. Twiggs
       Cobb County Police Department
       140 North Marietta Parkway
       Marietta, Georgia  30060-1454

53.    Cynthia M. Watson
       1015 Beloit Place
       Roswell, Georgia  30075

54.    James R. Watson
       1015 Beloit Place
       Roswell, Georgia  30075

55.    Dennis West, RN
       Grady Hospital Burn Center
       80 Jesse Hill Drive
       Atlanta, Georgia  30303

56.    Charles Williams
       4308 Sprucebough Drive
       Marietta, Georgia  30062

57. Steve Wilson
    Metro Atlanta Ambulance
    595 Armstrong Street
    Marietta, Georgia  30060

58. Courtney Yelder
    600 Valley Street
    Gadsden, Alabama  35902

59. Chevron corporate representative

60. Current and former Chevron employees with knowledge of Chevron's retail
    operations in Georgia

61. Any witness necessary for rebuttal

62. Any witness necessary for impeachment

63. Any witness necessary to authenticate or lay a foundation for the
    admission of documentary evidence

64. Any witnesses identified in Plaintiff's Witness List (Attachment "F-1")

ATTACHMENT "G-1"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **TRACYE CURRIE, Individually and** | ) | |
| **as Surviving Mother and Personal** | ) | |
| **Representative of the Estate of** | ) | |
| **NODIANA ANTOINE, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **1:05-CV-1610-BBM** |
| **CHEVRON U.S.A. INC.,** | ) | |
| **CHEVRON STATIONS INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S LIST OF DOCUMENTARY AND PHYSICAL EVIDENCE

### Exhibits

1)    Any and all medical records and bills relating to the care and treatment of

Nodiana Antoine as a result of the injuries sustained by her in the subject

incident;

2)    Any and all bills and/or invoices relating to the expenses incurred by Tracye

Currie arising from the care and treatment of Nodiana Antoine as a result of

the injuries sustained by her in the subject incident;

3)   Any and all bills and/or invoices relating to funeral, burial and other related expenses;

4)   The Cobb County Superior Court file material regarding the criminal matter of the State of Georgia v. Anjail Durriyyah Muhammad, Case No. 04-2168 along with the Cobb County Police and District Attorney's investigation file material;

5)   Letters of Administration and Order Appointing Personal Representative;

6)   Surveillance tape from Chevron gas station taken on May 25, 2003;

7)   Photographs of Nodiana Antoine taken on May 25, 2003;

8)   Register tape from Chevron gas station taken on May 25, 2003;

9)   Financial Statements of Chevron from 2002 and 2003;

10)  Loss Investigation/Near Loss Investigation Reports dated, July 29, 2002, August 5, 2002; and June 11, 2002 and any materials that may have been obtained regarding these incidents;

11)  News coverage by WAGA, WSB-TV, WXIA, and WGCL of the incident in question;

12)  Chevron Documents Bates No. CURRIE00001-CURRIE00863;

13)  Document ascertaining the price of gas in the Atlanta area at the time of the incident;

14)  Any and all documents or standards relied upon by expert witnesses for all parties;

15)  Any and all documents attached as exhibits to any motions previously filed;

16)  Any and all documents attached as exhibits to any deposition;

17)  Any exhibits identified by any other party to this action;

18)  All documents and materials filed and/or served in connection with the underlying action, including but not limited to pleadings, discovery requests and responses, depositions or evidentiary materials created, taken or produced by any party in the underlying case for purposes of discovery;

Plaintiff reserves the right to introduce, if otherwise admissible, any exhibit identified in Defendants' Exhibit List (Attachment "G-2") as may be attached to the Pre-Trial Order. Plaintiff reserves the right to object to any document or other exhibit contained in Defendants' Exhibit List (Attachment "G-2").

ATTACHMENT "G-2"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **TRACYE CURRIE, Individually and** | ) | |
| **as Surviving Mother and Personal** | ) | |
| **Representative of the Estate of** | ) | |
| **NODIANA ANTOINE, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **1:05-CV-1610-BBM** |
| **CHEVRON U.S.A. INC.,** | ) | |
| **CHEVRON STATIONS INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' LIST OF DOCUMENTARY AND PHYSICAL EVIDENCE

### Defendants' Exhibit List

1.    Letter of Administration and Order, 5/20/05

2.    General Bill of Indictment, 5/20/04

3.    Notice of State's Intent to Seek the Death Penalty, 5/21/04

4.    Arrest/Booking Report, 5/25/03

5.    Georgia Criminal History Report

6.    Application for Warrant

7.      Cobb County Incident Report, 5/25/2003

8.      Incident Supplemental Report re: Background from Gadsden Police Department

9.      Incident Supplemental Report re: Interview with Tracye Currie

10.     Incident Supplemental Report re: Interview with Zakiyah Muhammad

11.     Incident Supplemental Report re: Interview with Manuel Archuletta

12.     Incident Supplemental Report re: Interview with Courtney Yelder

13.     Incident Supplemental Report of Officer Lois Elizabeth King, 5/29/2003

14.     Incident Supplemental Report of Officer John Allan Love, 5/29/2003

15.     Incident Supplemental Report of Officer Jamie Morris, 5/29/2003

16.     Incident Supplemental Report re: Interview with Celeste Miller

17.     Incident Supplemental Report re: Interview with Dionne Roberts

18.     Incident Supplemental Report re: Lisa Ann Shelton Aguila

19.     Incident Supplemental Report re: ATC check of Smith & Wesson .32 caliber revolver

20.     Incident Supplemental Report of Officer John Walter Thompson, 6/3/2003

21.     Incident Supplemental Report of Officer Kenneth LeCroy, 6/4/2003

22.     Incident Supplemental Report of Officer Cynthia Gale Ash, 6/17/2003

23.    Incident Supplemental Report of Officer Cynthia Gale Ash re: Interview of Jyotika Shukla, 6/17/2003

24.    Incident Supplemental Report of Officer Cynthia Gale Ash re: Interview of Dona Ellis and Charles Ellis, 6/17/2003

25.    Incident Supplemental Report of Officer Cynthia Gale Ash re: Interview of Pamela F. Robinson, 6/17/2003

26.    Incident Supplemental Report of Officer Cynthia Gale Ash re: Interview of Carol Faust and Richard Butterworth, 6/17/2003

27.    Incident Supplemental Report of Officer Cynthia Gale Ash re: Interview of Deputy Jason Barrett, 6/17/2003

28.    Incident Supplemental Report of Officer Cynthia Gale Ash re: Forms for statements of Cynthia Watson and James Watson, 6/17/2003

29.    Incident Supplemental Report of Officer Cynthia Gale Ash re: Interview of Lydiah Mwangi, 6/17/2003

30.    Incident Supplemental Report of Officer Cynthia Gale Ash re: Interview of Metro Atlanta Ambulance EMTs Steve Wilson and Jay Singleton, 6/17/2003

31.    Incident Supplemental Report re: Charge upgraded to Murder, 7/10/2003

32.    Incident Supplemental Report re: Family Death Notification to Tracye Currie, 7/10/2003

33.    Incident Supplemental Report re: DA office notification, 7/10/2003

34.    Incident Supplemental Report re: Arson Report, 7/10/2003

35.    Incident Supplemental Report re: Officer King's videotape

36.     Incident Supplemental Report re: Interview of Anjail Muhammad, 7/10/2003

37.     Incident Supplemental Report re: ATF trace results, 7/11/2003

38.     Incident Supplemental Report re: Autopsy results, 8/26/2003

39.     Incident Supplemental Report re: Draft transcript of Officer Twiggs' interview with Anjail Muhammad, 5/25/2003

40.     Medical Examiner's Report

41.     Certificate of Death

42.     Journal Entries of Anjail Muhammad

43.     Photographs - Cobb County Police Department

44.     Letter to Hon. Robert Flournoy from Kevin Richards re: Competency evaluation of Anjail Durriyyah Muhammad, 9/24/2003

45.     Cobb County Adult Detention Center - Inmate Grievance Form, 6/19/2004

46.     Cobb County Department of Public Safety - Incident/Offense Report, 8/18/2003

47.     Photograph of Chevron service station re: Dispenser 1 looking toward store and partial store door

48.     Photograph of Chevron service station re: Dispenser 1 and advertisement

49.     Photograph of Chevron service station re: Warning labeling on side of Dispenser 1

50.     Photograph of Chevron service station re: warning labeling on side of Dispenser 1

51.     Photograph of Chevron service station re: both clerk positions

52.     Medical Records from Grady Hospital

53.     Records from Cobb County Fire Department

54.     Records from Cobb County Sheriff's Office

55.     Records from Metro Atlanta Ambulance

56.     Cobb County Police Department Investigative File - Handwritten Statement of Pamela Robinson

57.     Records from Cobb County Fire Investigations and Cobb County Police Department

58.     Internet Printout:   Historical Gas Price Charts - Atlanta Gas Prices, www.atlantagasprices.com/retail_price_chart.aspx, for gas prices on 2003 - 2006, 2/2/2006

59.     Training Materials - Incident Prevention Training Guide: Underground Tanks, Alarm Systems and Dispensers

60.     Training Materials - Workplace Safety and You: Training Evaluation Forms and Job Aids

61.     Training Materials - Workplace Hazards and What to Do About Them, 2001

62.     Training Materials - Workplace Safety and You, 1999

63.     Gasoline Handling Tips Brochure

64.    Cobb County Business License, Business Registration, Occupational Tax Certificate, 2003

65.    State of Georgia Certificate of Registration, 32 - Service Stations

66.    Relevant documents from the Employee File of Jyotika Shukla

67.    Relevant documents from the Employee File of Charles Williams

68.    Employee Timesheet - 5/25/2003

69.    Relevant documents from the Employee File of Lydiah W. Midawgi

70.    Relevant documents from the Employee File of Islam Ahmed

71.    Chevron Station Transaction files for 5/25/2003

72.    Shell Oil Company Diagram of Incident Station

73.    CAP Index

74.    Radius Map for CAP Index

75.    Crime List of CAP Index

76.    Training manuals for the National Association of Convenience Stores (NACS), 2005

77.    Crime Classification Manual (CCM)

78.    12/13/05 Deposition of Pamela Robinson, Exhibit No. 1: Cobb County Department of Public Safety Supplemental Incident Report

79.    12/13/05 Deposition of Pamela Robinson, Exhibit No. 2: Handwritten Statement of Pamela Robinson to Cobb County Police Department

80.     12/13/05 Deposition of Pamela Robinson, Exhibit No. 3: Typed Statement of Pamela Robinson

81.     12/13/05 Deposition of Pamela Robinson, Exhibit No. 4: Statement Along with Cover letter from Mr. Moore forwarding written statement to Pamela Robinson

82.     1/18/06 Deposition of Robert S. Eagan, Exhibit No. 1:  Expert Report of Robert S. Eagan, Fuel Systems Consulting, 12/26/2005

83.     1/18/06 Deposition of Robert S. Eagan, Exhibit No. 3:  Working file materials of Robert S. Eagan

84.     1/18/06 Deposition of Robert S. Eagan, Exhibit No. 4:  Handwritten notes of Robert S. Eagan, 1/16/06

85.     1/18/06 Deposition of Robert S. Eagan, Exhibit No. 5:  Motor fuel station survey documents

86.     1/18/06 Deposition of Robert S. Eagan, Exhibit No. 6:  Technical plans and specifications

87.     1/18/06 Deposition of Robert S. Eagan, Exhibit No. 7:  Photograph of incident station

88.     Expert Report of Rosemary J. Erickson, Ph.D.

89.     1/26/06 Deposition of Rosemary J. Erickson, Ph.D., Exhibit No. 1: Rosemary Erickson file of correspondence, expert reports, and time records/ billing records

90.     1/26/06 Deposition of Rosemary J. Erickson, Ph.D., Exhibit No. 2: Miscellaneous working file materials

91.     1/26/06 Deposition of Rosemary J. Erickson, Ph.D., Exhibit No. 3: Materials used by Rosemary Erickson in expert report

92.    1/26/06 Deposition of Rosemary J. Erickson, Ph.D., Exhibit No. 4: Handwritten notes by Rosemary Erickson

93.    1/26/06 Deposition of Rosemary J. Erickson, Ph.D., Exhibit No. 5: Handwritten notes by Rosemary Erickson

94.    1/26/06 Deposition of Rosemary J. Erickson, Ph.D., Exhibit No. 6: Handwritten notes by Rosemary Erickson

95.    1/26/06 Deposition of Rosemary J. Erickson, Ph.D., Exhibit No. 7: Referenced articles

96.    Curriculum Vitae of Jeffrey M. Shapiro

97.    1/30/06 Deposition of Jeffrey M. Shapiro, P.E., Exhibit No. 1:  Expert Report by Jeffrey M. Shapiro, P.E., 1/2/2006

98.    1/30/06 Deposition of Jeffrey M. Shapiro, P.E., Exhibit No. 2: Case Notes, 12/8/2005

99.    1/30/06 Deposition of Jeffrey M. Shapiro, P.E., Exhibit No. 3:  Rules of Fire Commissioner, Chapter 120-3-11, Rules and Regulations for Flammable and Combustible Liquids

100.    1/30/06 Deposition of Jeffrey M. Shapiro, P.E., Exhibit No. 4:  Fire Code Inspector's Guide

101.    NFPA 30E, Self-Service Gasoline Stations 1963

102.    NFPA No. 30, Flammable and Combustible Liquids Code 1963

103.    NFPA No. 30, Flammable and Combustible Liquids Code 1969

104.    NFPA No. 30, Flammable and Combustible Liquids Code 1972

105.    NFPA No. 30, Flammable and Combustible Liquids Code 1981

106.    NFPA No. 30A, Automotive and Marine Service Station Code, 1984

107.    NFPA No. 30A, Automotive and Marine Service Station Code, 1987

108.    NFPA No. 30A, Automotive and Marine Service Station Code, 1990

109.    NFPA No. 30A, Automotive and Marine Service Station Code, 1993

110.    NFPA 30A Code for Motor Fuel Dispensing Facilities and Repair Garages, 2000 Edition

111.    NFPA 30A Code for Motor Fuel Dispensing Facilities and Repair Garages, 2003 Edition

112.    Handbook to NFPA 30A

113.    Transcripts of NFPA 30/30A Committee Meetings

114.    Transcript of NFPA Fire Marshall's Association, Hotel Americana, New York, New York, Sunday, May 11, 1969

115.    Transcript of NFPA Fire Marshall's Association, Hotel Americana, New York, New York, Sunday, May 13, 1969

116.    Video of subject service station

117.    Photographs of subject service station

118.    Computerized depiction of subject service station

119.    Drawing of subject service station

120.    Any and all pleadings and discovery filed in this case

121.    Any and all documents produced by Plaintiff

122.    Any otherwise admissible exhibit identified by Plaintiff

123.    Any Additional Reports of Defendant's Experts, including any literature or other documents referenced in the reports

124.    Any exhibits necessary for impeachment and rebuttal

125.    Enlargements or demonstratives of any exhibits

Defendant reserves the right to supplement its Exhibit List based upon Plaintiff's Exhibit List and Plaintiff's allegations and/or theories.