# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **TRACYE CURRIE, Individually and** | ) | |
| **as Surviving Mother and Personal** | ) | |
| **Representative of the Estate of** | ) | |
| **NODIANA ANTOINE, deceased,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.** |
| | ) | **1:05-CV-1610-BBM** |
| **CHEVRON U.S.A. INC.,** | ) | |
| **CHEVRON STATIONS INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

COMES NOW, Plaintiff Tracye Currie, by and through undersigned counsel, and hereby files this Response to Defendants' Memorandum of Law in Support of Their Renewed Motion for Judgment as A Matter of Law or New Trial showing this Honorable Court as follows:

### Introduction

As an initial matter, Defendants' Motion borders on being made in bad faith. First, the facts as set forth in Defendants' Brief are clearly what the Defendants have determined to be the facts most favorable to their arguments. However, for

purposes of a Motion for Judgment as a Matter of Law, Defendants must base their motion on the factual circumstances and inferences supportive of Plaintiff and the verdict. <u>Morro v. City of Birmingham</u>, 117 F.3d 508, 513 (11th Cir., 1997). <u>See also</u> Fed. R. Civ. P. 50(b). Furthermore, Defendants have deliberately and stubbornly ignored the applicable law on foreseeability in Georgia and insist on relying only on the <u>Sturbridge Partners, Ltd. v. Walker</u> case (infra) as the only way for Plaintiff to establish foreseeability in this case. Refusing to acknowledge the cases directly on point cited by the Plaintiffs in their Response to Defendants' Motion for Summary Judgment and during the numerous arguments during the trial is misleading and inappropriate.

## I.    Foreseeability.

Defendants, through the course of this litigation, have deliberately and stubbornly ignored the applicable law on foreseeability in Georgia. Defendants insist on citing to <u>Sturbridge Partners, Ltd. V. Walker</u>, 267 Ga. 785, 785-86, 482 S.E.2d 339, 340 (1997) to contend that the <u>only</u> way for a criminal act to be considered "foreseeable" to a proprietor is if the incident causing the injury is substantially similar in type to previous criminal activities occurring on or near the premises. <u>Id</u>. at 786. While <u>Sturbridge</u> is surely one way of showing that a criminal activity can be foreseeable to the proprietor, there is no rule in Georgia

that Plaintiff absolutely must show prior similar crimes in order to establish foreseeability. In fact, foreseeability can be established in Georgia based on the proprietor's notice of the danger at the time of the incident in question. Bishop v. Fairlanes Ga. Bowling, Inc., 803 F.2d 1548 (11th Cir., 1986); Wade v. Findley Management, Inc., 253 Ga. App. 688 (2002); Shoney's, Inc. v. Hudson, 218 Ga. App. 171 (citing Wallace v. Boys' Club of Albany, 211 Ga. App. 534 (1993)).

Plaintiff absolutely does not have to show that prior similar crimes took place at this gas station in order to establish that there is a jury question as to foreseeability. In Bishop, the Eleventh Circuit Court reversed the District Court's granting of defendant's motion for summary judgment on the issue of foreseeability. The Bishop court held that the jury could have found that the third-party assault on the plaintiff was foreseeable based on the third-party's behavior at the bowling alley prior to the assault. Id. at 1152. Specifically, the court noted that customers at the bowling alley had warned the employee on duty about the third-party's aggressive behavior toward the plaintiff. Id. at 1550. Finally, it is important to note that the Bishop court specifically stated in its opinion that it was undisputed that there had been no prior altercations of this sort at that bowling alley. Id.

In the present case, there are facts on the record upon which the jury could conclude that, prior to the clerk turning on the pump and allowing Muhammad to douse Nodiana with gasoline, a customer warned the clerk about Muhammad dragging Nodiana around like an animal, visually demonstrated to the clerk how Muhammad was dragging Nodiana around, told the clerk there was something wrong, and told the clerk to call the police immediately.  There are facts on the record that would indicate that Shukla saw these actions by Muhammad toward Nodiana.  There are facts that also show that after being warned and observing Muhammad's violent behavior toward Nodiana, the clerk authorized the pump in order to allow Muhammad access to gasoline which she used to douse Nodiana. There is even evidence on the record that the clerk looked right at Muhammad who was holding Nodiana by the collar, standing at the pump without a car or an authorized container before turning on the pump for Muhammad.  Certainly, the jury could conclude from these facts that it was foreseeable to the clerk, prior to her negligent act of turning on the pump, that Nodiana could be further injured by Muhammad with the gasoline if the clerk turned the pump on.

It is important to note that in the <u>Bishop</u> case, the negligent act for which the plaintiff's injury should have been foreseeable was the employee taking <u>no action</u> to prevent the injury.  <u>Bishop</u>, 803 F.2d at 1551 (emphasis added).    Here, in

addition to the clerk taking no action to prevent Nodiana from getting doused with gasoline, such as calling the police or telling Muhammad to leave the premises, the clerk actually performed an act by turning on the pump which made Nodiana's injury even more foreseeable.

In <u>Wade</u>, there was evidence on the record which plaintiff argued constituted prior similar incidents at the location. <u>Id.</u> at 690-691. However, the court specifically noted that a showing of prior similar incidents at the particular premises is not required to establish that a particular danger was reasonably foreseeable. <u>Id.</u>

In the <u>Wade</u> case, the plaintiff was attacked by a group of boys and knocked to the ground in front of an employee of the restaurant. <u>Id.</u> at 689. The employee did nothing while the boys continued to attack the plaintiff knocking him to the ground, kicking him, and causing him to injure his head on a planter. <u>Id.</u> Significantly, the court pointed out that even if the defendant could not foresee the initial attack by the boys on the plaintiff (either because there were no prior similar incidences or otherwise), the defendant still should have foreseen that the assault would continue on the plaintiff and that he could have been injured more severely. <u>Id.</u> at 690. The court further held that failing to order the attackers to leave the

premises and in taking no action to stop the attack from getting worse was sufficient to create a jury question as to defendant's liability.  Id.

Pursuant to Wade, even if Defendants' clerk did not foresee that Muhammad would initially assault Nodiana for trying to leave her, the Defendants' clerk should have foreseen that Muhammad's assault on Nodiana would continue based on her own actual observations, what her observations should have been if properly supervising, and the customer's explicit warnings.  Specifically, the clerk should have foreseen that her lack of supervision, her inaction in not ordering Muhammad to leave and in not calling the police, and her action in providing Muhammad access to the gasoline while assaulting Nodiana would allow the assault on Nodiana to continue and in fact make it worse.  Certainly, a jury could and did make these conclusions based on the facts and inferences in this case.

It should again be noted that any foreseeability in Wade was based on the employee taking no action.  Wade, 253 Ga. App. at 691 (emphasis added).  In the present case, foreseeability is based on the employee taking no action and on the employee taking an action, activating the pump for Muhammad with no car and no container after dragging Nodiana to the pump and holding her by the collar, that reasonably should have been foreseen to make the situation worse and allow Nodiana to be doused with gasoline.

In <u>Shoney's, Inc. v. Hudson</u>, 218 Ga. App. 171 citing <u>Wallace v. Boys Club</u> <u>of Albany</u>, 211 Ga. App. 534 (1993), the court specifically noted that prior crimes at a specific location are not required to establish foreseeability.  In the <u>Wallace</u> case, the court noted that the danger of an unsupervised child being abducted was a matter that a jury could find generally foreseeable, even if it had not occurred in that area before.  <u>Id.</u> at 537.  In the present case, the danger that could result from authorizing a gasoline pump without any sort of supervision and the possible intentional misuse and harm to another should also be deemed generally foreseeable, especially given the ongoing assault on Nodiana on the premises and the fact that Muhammad had no car, no gas can and was dragging Nodiana around like an animal.

Finally, Defendants' own expert testified at trial that if a clerk saw one person dragging another around like an animal toward a gas pump without a car or an approved gas container that the clerk should reasonably have foreseen that a crime would occur.  Furthermore, there was a host of documents and testimony introduced at trial which illustrated that the Chevron was aware of the dangers of improperly supervised gasoline pumps and that employees were repeatedly taught about the dangers of unsupervised gasoline pumps and of turning gasoline pumps on without first checking out the situation.  More than one employee testified that,

for safety reasons, the clerk must look before turning on the pump to make sure everything is okay at the pump prior to allowing access to the gasoline. For all of the above-stated reasons, when the facts and the inferences from those facts are construed in the light most favorable to Plaintiff, and applied to the applicable body of law in Georgia which includes cases other than <u>Sturbridge</u>, it is clear that Defendants' Motion for New Trial or for Judgment as a Matter of Law on the issue of foreseeability should be denied.

## II.    Superior Knowledge.

Defendants contend that Nodiana had superior knowledge that Muhammad would attack her, and since Defendants had no knowledge of this, they are entitled to judgment as a matter of law on Plaintiff's negligence and negligence per se claims.

At the outset, Defendants' argument regarding superior knowledge is applicable only to Plaintiff's premises liability claims and is not applicable to Plaintiff's negligence per se for violating numerous rules and regulations of Georgia, active negligence for turning on the gasoline pump amidst a violent altercation thus providing Muhammad access to a weapon, and negligently hiring and training its employees as evidenced by employee Shukla, who thinks that it is

her duty to turn the pump on whenever it beeps regardless of what is going on at the pump.

In this regard, Defendants have attempted to use <u>Kull v. Six Flags Over Ga. II, LP</u>, 264 Ga. App. 715, 592 S.E.2d 143 (2003) in a footnote for the proposition that superior knowledge defeats Plaintiff's claims of negligence per se. It should be noted that <u>Kull</u> does not address this issue. In fact, Plaintiff does not disagree with the language quoted by Defendants from the <u>Kull</u> case that "if the court finds negligence per se, Plaintiffs must then demonstrate the causal connection between negligence per se and the injury." Clearly, there is evidence on the record that the jury concluded that a causal connection existed between the clerk's negligence per se in turning on the pumps in the circumstances which resulted in Nodiana being doused in gasoline and lit on fire. Furthermore, negligence per se is usually sufficient to establish superior knowledge on the part of the defendant. <u>See</u> <u>Hicks v. Walker</u>, 262 Ga. App. 216 (2003) citing <u>Bastien v. Metropolitan and Assoc.</u>, 209 Ga. App. 881 (1993) (Negligence per se through non-compliance with applicable code standards may be proof of owner's superior knowledge sufficient to defeat motion for summary judgment.) <u>See</u> <u>also</u> <u>Longleaf Industries, Inc. v. Mitchell</u>, 252 Ga. App. 343 (2001). This notion is especially applicable in the present case. The rules regarding dispensing gasoline that were broken by Defendants were designed

to prevent people from being injured by gasoline. The very existence of these rules should provide Defendants with sufficient knowledge regarding the dangers of unsupervised access to gasoline.

More importantly, based on the particular facts presented at the trial of this case, Defendants' argument regarding superior knowledge and the cases cited in support thereof are not applicable to the case at issue. The jury in this case could have reasonably determined that although Defendants would not have superior knowledge that Muhammad would get angry at Nodiana and drag her by the shirt and pull her down when she tried to escape, that conduct by Muhammad is not what caused Nodiana's injuries and eventual death. The conduct that resulted in Nodiana's injuries and death was Defendants' employee turning on the gasoline pump for Muhammad to douse Nodiana with gasoline. The jury could have reasonably concluded that only Defendants and their employees had superior knowledge that the employee in this case would deviate from every law, standard of care, and company policy applicable to authorizing a gasoline dispenser by turning on Pump No. 1, after actually seeing the assault on Nodiana, being warned about the situation, and being begged to call the police.

All of the cases cited by Defendants in this section are highly distinguishable, and none of the cases cited by Defendants involve a situation

where the defendant's employee actually affirmatively committed an act, such as turning on the gasoline pump, which directly resulted in harm to the Plaintiff.

Defendants rely most heavily on three cases that they discuss at length in their Brief and attempt to analogize to the present case. The Griffin v. AAA Auto Club South, Inc., 221 Ga. App. 1 (1996) case is highly distinguishable. In Griffin, the court held that the defendant proprietor did not have superior knowledge and indeed could not have done anything to prevent the shooting that occurred in the parking lot because the security guard never saw the third-party attacker. Id. at 3. The attacker waited around the corner, jumped out of his car, ran up to the plaintiff as she turned and ran, and shot her. Id. In the present case, Defendants' employee saw the attacker before Nodiana was doused with gasoline and had an opportunity to appreciate the danger of injury and prevent its occurrence by simply not turning the gasoline pump on.

In Griffin, the court also specifically noted that the defendant was insulated from liability because "[the defendant] did not create or allow to exist an environment which placed plaintiff at risk any more than if she had been at home or on the street." Id. In the present case, exactly the opposite situation occurred. Defendants' employee actually created an environment in which Nodiana was at more risk of being burned alive by turning the pump on for Muhammad after

seeing the assault and being warned to call the police.  Finally, in <u>Griffin</u>, the court noted that the plaintiff had superior knowledge of the danger from her boyfriend because she voluntarily went to the parking lot on a Saturday night without an escort.  <u>Griffin,</u> 221 Ga. App. at 3.  In the present case, Nodiana did not voluntarily go to the Chevron station to be doused with gasoline.  She was dragged around the premises to a gas pump and tried to get away, but was yanked to the ground like an animal.  Clearly, the facts in the present case are distinguishable from the facts in the <u>Griffin</u> case.

Additionally, Defendants have cited to <u>Whitmore v. First Fed. Savs. Bank,</u> 225 Ga. App. 768, 770, 484 S.E.2d 708, 711 (1997) claiming that Defendants did not have superior knowledge that gasoline was more dangerous than it appeared to the general public.  In <u>Whitmore</u>, the court concluded that victim who made a night deposit at the bank failed to show that the bank had superior knowledge that the night depository was more dangerous than it appeared to the general public.  <u>Id</u>. at 771.  The facts of this case are distinguishable because in <u>Whitmore</u>, the court recognized that Mr. Whitmore voluntarily engaged in depositing money at night.  The Court also recognized that Mr. Whitmore had used the night depository on several occasions and thus was aware of the general surrounding in the area.

Moreover, in <u>Whitmore</u>, the Bank and its employees did not affirmatively create an environment to put Mr. Whitmore in danger.

In the present case, Nodiana did not voluntarily go to Pump No. 1 to be doused with gasoline; she was dragged, jerked down like an animal when she tried to escape and taken to the gas pump against her will. Additionally, unlike in <u>Whitmore</u>, Defendants' employee actually created the environment that put Nodiana in danger by turning the gas pump on after seeing the assault on Nodiana and being warned to call the police.

Similarly, in <u>Howell v. Three Rivers Security, Inc., et al.</u>, 216 Ga. App. 890 (1995), it was undisputed that the plaintiff knew of the danger presented by the presence of two other patrons who apparently had it in for him. <u>Id.</u> at 891-892. The <u>Howell</u> court noted that, in spite of this knowledge by the plaintiff, plaintiff voluntarily remained at the bar thus exposing himself to an unnecessary risk of attack by the two other patrons. <u>Id.</u> Additionally, it was undisputed that the first act of violence in <u>Howell</u> was committed by the plaintiff who put one of the attackers in a headlock out of an expectation that they might hit him. <u>Id.</u> In the present case, Nodiana did not voluntarily expose herself to the risk of being doused with gasoline and burned alive. To the contrary, Nodiana was trying to leave Muhammad and was grabbed, dragged to the gasoline pump and could not get

away despite her efforts to do so.  Furthermore, Nodiana did not have superior knowledge that Defendants' employee would see Nodiana in peril, be warned by a customer of Nodiana's perilous situation, and then actually commit an act, turning on the pump for Muhammad with no car and no gas can who was holding Nodiana by the collar after dragging her to the pump, without which Nodiana could not have been doused with gasoline.  Clearly, the facts in the present case are distinguishable from those in <u>Howell</u>.

The bottom line is that Defendants had superior knowledge that a gasoline pump that is unsupervised or is supervised by an untrained employee can cause harm to its customers.  The jury concluded appropriately that the perilous instrumentality of which superior knowledge is required and the danger therefrom was the act of turning on the gasoline dispenser for someone with no car and no container who was dragging another girl around by the collar.  Only Defendant and its employees could have knowledge that their clerk was so untrained and/or uncaring that she would deviate from every law, standard of care, and company policy applicable to authorizing the dispensing of gasoline and turn a pump on for Nodiana's attacker to douse her in gasoline.

Further, Plaintiff contends that the "superior knowledge" rule has no application in the present case.  <u>Clark v. Carla Gay Address Company, Inc.</u>, 178

Ga. App. 157 (1986) ("An analysis of the parties' relative degree of knowledge and the proprietor's corresponding duty to warn the Plaintiff is <u>meaningless</u> where it is clear that whatever the invitee may have 'known' about the dangerous situation, he was unaware of its dangerous consequences or could not exercise any control over those consequences.") (emphasis added). In the present case, the jury could have reasonably found that Nodiana could not get away from Muhammad, as the evidence strongly suggests since Nodiana's attempted escape resulted in more violence, then clearly Nodiana could not "exercise any control over the consequences." Based on the facts established at trial, the jury could have reasonably concluded that Nodiana had no control over the gasoline pump which was handled by Muhammad and turned on by the Chevron clerk. The jury could have concluded that she could not get away and was afraid that further resistance would result in further violence. As such, the "superior knowledge" doctrine has no application to this case. Accordingly, this Court should deny Defendants' Renewed Motion for Judgment as a Matter of Law or New Trial.

**III.    Comparative Fault.**

Defendants have disingenuously created a factual scenario for this argument that is clearly not the most favorable set of facts in support of the non-moving party. The set of facts selected by Defendants is not only the least favorable set of

factual circumstances one could make in terms of supporting the verdict, but also encompasses the least favorable inferences, relying mostly on selected portions of a very suspect confession. Defendants have based their argument in part on factual allegations that Nodiana did not try to get away, Muhammad doused Nodiana with gas, that Nodiana said, "If I burn, you burn" and "Do my back" as Muhammad doused her in gasoline, and that Nodiana made no attempt to escape the situation while Muhammad made 10 attempts to spark the cigarette lighter. These conveniently based versions of the facts set forth by Defendants are not the facts and inferences taken therefrom most favorable to Plaintiff, as is required at this stage.

Based on the testimony at trial, the jury in this case could have reasonably concluded that Nodiana had decided to leave the relationship with Muhammad and that Nodiana's attempt to leave Muhammad and get away from her is what actually prompted Muhammad to attack Nodiana in the first place. The jury could have reasonably concluded that once Muhammad grabbed Nodiana and wrapped her fist in Nodiana's shirt, Nodiana tried to get away from Muhammad again. Her efforts to escape Muhammad's grasp resulted in increased violence by Muhammad who yanked Nodiana down to the ground like an animal. Robinson testified that Muhammad had control over Nodiana and that Nodiana could not do anything to

16

get away when she tried to pull away from Muhammad's grasp. Muhammad never let go of her grip on Nodiana the whole time the incident took place at Chevron and it was apparent she could not escape Muhammad's grip.

Based on these more reasonable facts and inferences drawn therefrom, it is entirely reasonable that the jury concluded that Nodiana thought the best way to avoid further harm and violence from Muhammad would be to offer less resistance, since her first attempt to leave Muhammad prompted Muhammad to attack her in the first place and her second attempt to escape Muhammad's grip was met with further violence by being yanked to the ground like an animal as stated by Pam Robinson. The jury could have reasonably concluded this especially based on the fact that Nodiana was a non-confrontational and non-aggressive sort of a person and was clearly the victim in an abusive relationship. Indeed, Defendants' own materials for training its employees regarding violence at their gas stations illustrates and actually advocates submission in certain violent circumstances. It is extraordinarily hypocritical for Defendants to criticize Nodiana for her chosen method of trying to avoid further harm from Muhammad. The jury could have reasonably concluded that Nodiana attempted to respond exactly how Defendants advocate its own employees should respond to violent situations by first attempting to get away, and then when she could not escape

Muhammad's grip, by becoming submissive so as not to promote additional violence.

Additionally, the jury could have reasonably decided not to believe a great deal of the facts set forth by Defendants if the jury decided that a murderer's journal as well as Muhammad's self-serving statement to the police were not reliable, especially when many of Muhammad's statements relied on by Defendants were inconsistent with other witnesses' testimony. In fact, Detective Twiggs testified at trial that it is his experience, statements given to police by suspects such as Muhammad are often self-serving. It is certainly within the purview of the jury to compare the alleged negligence by Nodiana, as compared to the negligence of Defendants and determine which party is more at fault. See Phelps v. Consolidated Equities Corp., 133 Ga. App. 189, 210 S.E.2d 337 (1974) (questions necessitating a decision as to whether a given state of facts show that a lack of ordinary care for one's own safety, which will bar recovery…are generally for the jury). Although Plaintiff adheres to its position that Nodiana was not comparatively at fault, the jury reasonably and appropriately determined that Defendants were more at fault than Nodiana and therefore Defendants' Motion Renewed Motion for Judgment as a Matter of Law or New Trial should be denied.

Respectfully submitted, this 15<u>th</u> day of <u>December</u>, <u>2006</u>.

Respectfully submitted,

WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, L.L.C.

<u>/s/ Patrick B. Moore</u>
John M. Hudgins, IV
Georgia Bar No: 374125
Patrick B. Moore
Georgia Bar No. 520390
Shubhra R. Mashelkar
Georgia Bar No. 475388
950 East Paces Ferry Road, Suite 3000
Atlanta, GA 30326
(404)876-2700
(404)875-9433 – Fax
Counsel for Plaintiff TRACYE CURRIE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2006, I electronically filed *Plaintiff's Response to Defendants' Memorandum of Law in Support of Their Renewed Motion for Judgment as a Matter of Law or New Trial*, using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

W. Ray Persons, Esq.
Halli D. Cohn, Esq.
Robert B. Friedman, Esq.
KING & SPALDING, LLP
1180 Peachtree Street
Atlanta, Georgia 30309

Dated: December 15, 2006.

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC

 /s/ Patrick B. Moore
Patrick B. Moore

950 East Paces Ferry Road, Suite 3000
Atlanta, Georgia 30326
404/876-2700 Telephone
404/875-9433 Facsimile